# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# TRENTON DIVISION

| | |
|---|---|
| LISA HULAC, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TAILING, LLC, TAILING INTERNATIONAL, LLC, and TAILING INSPECTION AND TRAINING SERVICES, LLC,<br><br>Defendants. | **Case No. 3:22-CV-2406**<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Lisa Hulac (Hulac) brings this action individually and on behalf of all day rate workers who worked for Tailing LLC, Tailing International, LLC, or Tailing Inspection and Training Services, LLC, or some combination thereof, and who were paid a day rate with no overtime compensation (the Day Rate Workers or Putative Class Members) in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, the New Jersey Wage and Hour Law (NJWHL), *see* N.J.S.A. § 34:11-56a *et seq.*, and the Pennsylvania Minimum Wage Act (PMWA), *see* 43 P.S. § 33.101 *et seq.*

2.     Tailing, LLC, Tailing International, LLC, and Tailing Inspection and Training Services, LLC, are referred to collectively as "Tailing."

3.    Hulac worked for Tailing as a field accountant in Princeton, New Jersey and Austin, Pennsylvania.

4.    Hulac and the Day Rate Workers (as defined below) regularly worked for Tailing in excess of forty (40) hours each week, but Tailing did not pay them overtime as required by federal law, New Jersey law, and Pennsylvania law.

5.    Instead, Tailing improperly paid Hulac and the Day Rate Workers a flat amount for each day worked (a "day rate") without overtime compensation.

6.     Tailing did not pay Hulac and its other Day Rate Workers a guaranteed salary.

7.    This collective action and Rule 23 class action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.    The Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

10.    For at least the past three years, Tailing has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

11.    Venue is proper under 28 U.S.C. § 1391(b)(2) because Hulac performed work for Tailing in Princeton, New Jersey, and therefore a significant portion of the facts giving rise to this lawsuit occurred within this District and Division.

## THE PARTIES

12.    Hulac worked for Tailing from approximately January 2019 through March 2020. Hulac's consent to be a party plaintiff is attached as Exhibit 1.

13.    Hulac did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.

14.    Hulac brings this action individually and on behalf of all similarly situated workers who were paid pursuant to Tailing's day rate pay practice. Tailing paid each of these workers a flat amount for each day worked.

15.    The class of similarly situated employees sought to be certified as a collective action is defined as:

> **All workers employed by—or working on behalf of—Tailing who were paid a day rate at any time in the last three (3) years** (the FLSA Day Rate Workers).

16.    Hulac also seeks class certification of an additional class pursuant to Fed. R. Civ. P. 23 under the NJWHL as:

> **All workers employed by—or working on behalf of—Tailing in New Jersey who were paid a day rate at any time in the last three (3) years** (the New Jersey Day Rate Workers).

17.     Hulac also seeks class certification of an additional class pursuant to Fed. R. Civ. P. 23 under the PMWA as:

> **All workers employed by—or working on behalf of—Tailing in Pennsylvania who were paid a day rate at any time in the last three (3) years** (the Pennsylvania Day Rate Workers).

18.     The FLSA Day Rate Workers, the New Jersey Day Rate Workers, and the Pennsylvania Day Rate Workers are referred to collectively as the Day Rate Workers or the Putative Class Members.

19.     Tailing is a Louisiana limited liability company doing business throughout the United States and it may be served with process by serving its registered agent: **William N. Abel,** 103 West 3rd Street, Thibodaux, LA 70301**.**

### FACTUAL ALLEGATIONS

20.     Tailing was founded in 2007.[1]

21.     Tailing provides "3rd party inspection, construction/project management, commissioning, field operations, and staffing services to the energy industry."[2]

22.     Tailing markets itself as a "True Inspection Company" and a "True Construction Management Company," making inspection services, for example, one of the core "products" it sells to its customers.[3]

---

[1] http://www.tailingllc.com/about-us/ (last viewed April 21, 2022).
[2] http://www.tailingllc.com/ (last viewed April 21, 2022).
[3] *Id*.;  http://www.tailingllc.com/services/construction-management/  (last viewed April 21, 2022); http://www.tailingllc.com/services/inspection-services/ (last viewed April 21, 2022).

23.    Hulac worked for Tailing as a field accountant from approximately January 2019 through March 2020.

24.    Hulac worked for Tailing in Princeton, New Jersey, and Austin, Pennsylvania.

25.    Throughout her employment, Hulac was paid a flat rate for each day worked regardless of the total hours worked in a day or week with no overtime compensation ("day rate pay plan").

26.    Tailing assigned Hulac to perform work for its client, The Williams Companies, Inc.

27.    In fact, Hulac was Tailing's employee.

28.    Hulac reported the hours she worked to Tailing on a regular basis.

29.    Hulac frequently worked 10 hours each weekday and 6 hours on Saturday.

30.    Although she typically worked at least 6 days a week, for at least 10 hours each weekday, Hulac did not receive any overtime pay.

31.    Hulac's hours of work are reflected in Tailing's records.

32.    Hulac and the Day Rate Workers received a day rate from Tailing regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

33.    Hulac's work schedule is typical of the Day Rate Workers' schedules.

34.    Tailing knows Hulac and the Day Rate Workers frequently work for more than 10 hours a day, and 6 days a week.

35.    Tailing's records reflect the fact that Hulac and the Day Rate Workers regularly work far in excess of 40 hours in certain workweeks.

36.    Tailing's practice of paying its workers a flat day rate is a "compensation scheme" which "is a per se violation of the FLSA." *McLaughlin v. Seneca Res. Corp*., No. CV 17-255, 2018 WL 1784554, at *2 (W.D. Pa. Apr. 13, 2018) (citing *Tamez, v. BHP* Billiton Petroleum (Americas), Inc., 2015 WL 7075971, at *3 (W.D. Tex. Oct. 5, 2015); *see also* 29 U.S.C. § 207; 29 C.F.R. § 778.112; *Hickman v. TL Transportation*, LLC, 318 F. Supp. 3d 718, 719-20, 723, 728 (E.D. Pa. 2018); *Hewitt v. Helix Energy Solutions Grp., Inc*., 15 F.4th 289, 290-91, 297-98 (5th Cir. 2021) (a day rate alone can never meet the "salary basis" test as a "daily rate, by definition, is paid with regard to – and not 'regardless of' – 'the number of…days…worked'"); *Hughes v. Gulf Interstate Field Servs., Inc*., 878 F.3d 183, 187, 190 (6th Cir. 2017) (a day rate is not a "salary").

37.    Tailing was well aware of the overtime requirements of the FLSA.

38.    In fact, on information and belief, Tailing pays overtime to its "in-house" hourly staff (such as secretaries and receptionists).

39.    Tailing nonetheless failed to pay Hulac and the Day Rate Workers overtime.

40.    Tailing is an employer of the workers it provides to its clients.

41.    Tailing retains the right to terminate its workers' employment.

42.    Tailing's clients often provide pay rates and guidelines that Tailing must follow in paying workers such as the Day Rate Workers.

43.    Tailing's workers are often supervised by Tailing's clients.

44.    Tailing's workers regularly perform their job duties at locations operated by Tailing's clients and act as an integral part of the clients' workforces.

45.    Tailing paid each of the Day Rate Workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek.

46.    Hulac and the Day Rate Workers do not receive a salary to be exempt under the FLSA, the NJWHL, or the PMWA.

47.    Tailing cannot demonstrate that Plaintiffs were paid on a salary basis in accordance with the FLSA.

48.    If Hulac and the Day Rate Workers did not work, they did not get paid.

49.    Hulac brings an FLSA collective action and Rule 23 class action on behalf of herself and all other workers Tailing paid according to its day rate pay plan.

**FLSA COVERAGE**

50.    At all times hereinafter mentioned, Tailing was and is an employer within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

51.    At all times hereinafter mentioned, Tailing was and is an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

52.    At all relevant times, Tailing has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

53.    At all relevant times, Tailing has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

54.    At all relevant times, Hulac and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

55.    Tailing's day rate pay practice extends well beyond Hulac.

56.    Tailing's day rate pay practice is a per se violation of the FLSA.

57.    Tailing applied this pay practice to the Day Rate Workers regardless of any alleged individualized factors such as job position, job duties, job responsibilities, or geographic location.

58.    Tailing has paid numerous field accountants, inspectors, and other construction management workers according to the same unlawful pay scheme.

- 8 -

59.    While exact job titles and job duties may differ, these workers are subjected to the same or similar illegal pay practices for similar work.

60.    Any differences in job duties does not detract from the fact that these Day Rate Workers were entitled to overtime pay.

61.    These workers paid a daily rate with no overtime make up the proposed collective of Day Rate Workers.

62.    By paying workers a day rate with no overtime compensation, Tailing violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

63.    Tailing's uniform compensation scheme of paying Day Rate Workers a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

64.    The Day Rate Workers impacted by Tailing's unlawful day rate pay scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

**CAUSE OF ACTION**
**FLSA VIOLATION**

65.    Tailing's day rate pay plan violates the FLSA because Hulac and the other Day Rate Workers did not receive overtime pay for hours they worked in excess of 40 in a week.

66.     Tailing knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

67.     Tailing's failure to pay overtime compensation to the Day Rate Workers was not based on any reasonable interpretation of the law.

68.     Nor was Tailing's decision not to pay its Day Rate Workers overtime made in good faith.

69.     By failing to pay Hulac and those similarly situated to her overtime at one-and-one-half times their regular rates, Tailing violated the FLSA's overtime provisions.

70.      By paying Hulac and the Putative Class Members a day rate, Tailing violated the FLSA's overtime provisions.

71.     Hulac and the Putative Class Members are (or were) non-exempt employees who worked for Tailing and were engaged in services that were directly essential to the production of goods for Tailing and related energy industry companies. 29 U.S.C. § 203(j).

72.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Tailing.

73.     Tailing violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in

excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

74.    Hulac and the Putative Class Members have suffered damages and continue to suffer damages as a result of Tailing's acts or omissions as described herein, and Tailing is in possession and control of necessary documents and information from which claimants would be able to precisely calculate damages.

75.    Moreover, Tailing knowingly, willfully, and in reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

76.    Tailing's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

77.    Tailing knew or should have known its pay practices were in violation of the FLSA.

78.    Tailing is a sophisticated party and employer, and therefore knew (or should have known) its policies were in violation of the FLSA.

79.    Hulac and the Putative Class Members, on the other hand, are (and were) unsophisticated employees who trusted Tailing to pay overtime in accordance with the law.

80.    The decision and practice by Tailing to not pay overtime was neither reasonable nor in good faith.

81.    Tailing was aware of the requirements of the Fair Labor Standards Act.

82.    Despite knowing FLSA's requirement, Tailing failed to pay Hulac and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

83.    Tailing did not investigate the legality of its classification of its Day Rate Workers as exempt from overtime pay.

84.    Tailing did not conduct time studies of the exempt and non-exempt job duties performed by its Day Rate Workers.

85.    Tailing was aware of Hulac's job duties

86.    Tailing was aware of the Day Rate Workers' job duties.

87.    Tailing was aware Hulac worked in excess of forty hours in a workweek.

88.    Tailing was aware its Day Rate Workers worked in excess of forty hours in a workweek.

89.    Tailing has previously been sued for alleged violation of the FLSA by subjecting workers to a common, unlawful pay plan. *See, e.g.*, *York v. Tailing, LLC*, No. 3:15-cv-234, ECF 1 (S.D. Tex. 2015).

90.    Despite prior litigation regarding Tailing's misclassification of workers as exempt from overtime pay, Tailing continues its policy of withholding overtime from misclassified workers.

91.     Accordingly, Hulac and the Putative Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## CAUSE OF ACTION
## NJWHL VIOLATION

92.     Hulac brings her claim under the NJWHL as a Rule 23 class action.

93.     Tailing's conduct alleged violates the NJWHL.

94.     At all relevant times, Tailing was subject to the requirements of the NJWHL.

95.     At all relevant times, Tailing employed Hulac and the New Jersey Day Rate Workers as "employees" within the meaning of the NJWHL.

96.     The NJWHL requires employers like Tailing to pay employees at 1.5 times their regular rate of pay for hours worked in excess of 40 in any week.

97.     Hulac and the New Jersey Day Rate Workers are entitled to overtime under the NJWHL.

98.     Tailing has and has had a policy and practice (its day rate pay plan) that failed to pay Hulac and the New Jersey Day Rate Workers overtime for hours worked in excess of 40 in a workweek.

99.     Hulac and the New Jersey Day Rate Workers seek unpaid overtime in amount equal to 1.5 times their regular rates of pay for work performed in excess of 40

in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

100.   Hulac and the New Jersey Day Rate Workers also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Tailing, as provided by the NJWHL.

### CAUSE OF ACTION
### PMWA VIOLATION

101.   Hulac brings her claim under the PMWA as a Rule 23 class action.

102.   Tailing's conduct alleged violates the PMWA.

103.   At all relevant times, Tailing was subject to the requirements of the PMWA.

104.   At all relevant times, Tailing employed Hulac and the Pennsylvania Day Rate Workers as "employees" within the meaning of the PMWA.

105.   The PMWA requires employers like Tailing to pay employees at 1.5 times their regular rate of pay for hours worked in excess of 40 in any week.

106.   Hulac and the Pennsylvania Day Rate Workers are entitled to overtime under the PMWA.

107.   Tailing has and has had a policy and practice (its day rate pay plan) that failed to pay Hulac and the Pennsylvania Day Rate Workers overtime for hours worked in excess of 40 in a workweek.

- 14 -

108.   Hulac and the Pennsylvania Day Rate Workers seek unpaid overtime in amount equal to 1.5 times their regular rates of pay for work performed in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

109.   Hulac and the Pennsylvania Day Rate Workers also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Tailing, as provided by the PMWA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

110.   Hulac brings this claim as a class and collective action under the FLSA, the NJWHL, and the PMWA.

111.   The Day Rate Workers were victimized by Tailing's day rate pay plan which is in willful violation of the FLSA, the NJWHL, and the PMWA.

112.   Other Day Rate Workers who worked with Hulac were paid in the same manner (a day rate with no overtime) and performed similar work at energy industry jobsites.

113.   The Putative Class Members are defined in Paragraphs 15-17.

114.   Tailing's failure to pay any overtime compensation results from generally applicable policies and practices and does not depend on the personal circumstances of the individual Putative Class Members.

115.    Thus, Hulac's experiences are typical of the experiences of the Putative Class Members.

116.    The specific job titles or precise job requirements of the various Putative Class Members does not prevent collective or class treatment.

117.    All of the Putative Class Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

118.    Based on her experiences with Tailing, Hulac is aware that Tailing's illegal day rate pay plan was imposed on the Day Rate Workers.

119.    The Day Rate Workers are similarly situated in all relevant respects.

120.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

121.    The illegal day rate pay plan Tailing imposed on Hulac was imposed on all Day Rate Workers.

122.    Like Hulac, the other Day Rate Workers are denied overtime when they work more than 40 hours per week.

123.    The overtime owed to Hulac and the Day Rate Workers will be calculated using the same records and the same formula.

124.    Hulac's experiences are therefore typical of the experiences of the Day Rate Workers.

125.   The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

126.   Hulac has no interest contrary to, or in conflict with, the Day Rate Workers that would prevent class or collective treatment.

127.   Like all Day Rate Workers, Hulac has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

128.   A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

129.   Absent a class or collective action, many Day Rate Workers will not obtain redress of their injuries, and Tailing will reap the unjust benefits of violating the FLSA, the NJWHL, and the PMWA.

130.   Further, even if some of the Day Rate Workers could afford individual litigation against Tailing, it would be unduly burdensome to the judicial system.

131.   Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate Workers, as well as provide judicial consistency.

132.   The questions of law and fact that are common to each Day Rate Worker predominate over any questions affecting solely the individual members.

133.   Among the common questions of law and fact are:

   a.   Whether Tailing was Hulac's and the Day Rate Workers' employer within the meaning of the FLSA, the NJWHL, and the PMWA;

b.      Whether Tailing's decision to pay a day rate with no overtime compensation to these workers was made in good faith;

c.      Whether Tailing's violation of the FLSA was willful; and

d.      Whether Tailing's illegal pay practice applied uniformly to the Day Rate Workers.

134.   Hulac and the Day Rate Workers sustained damages arising out of Tailing's illegal and uniform employment policy.

135.   Moreover, individual litigation would be unduly burdensome to the judicial system.

136.   Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

137.   Accordingly, the FLSA collective of similarly situated Plaintiffs should be certified as defined as in Paragraph 19 and notice should be promptly sent. At all times hereinafter mentioned, Tailing has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

**JURY DEMAND**

138.   Hulac demands a trial by jury.

**RELIEF SOUGHT**

139. Wherefore, Hulac respectfully prays for judgment against Tailing as follows:

      a.    for an order recognizing this proceeding as a collective action pursuant to Section 216 of the FLSA, conditionally certifying a class and requiring Tailing to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

      b.    for a judgment finding Tailing in violation of the FLSA, the NJWHL, and the PMWA;

      c.    for a judgment finding Tailing liable to Hulac and the Day Rate Workers for unpaid overtime, and an equal amount of liquidated damages;

      d.    for a judgment awarding Hulac and the Day Rate Workers reasonable attorneys' fees and costs and expenses of this action;

      e.    for a judgment awarding Hulac and the Day Rate Workers pre- and post-judgment interest at the highest rates allowed by law; and

      f.    for such other and further relief as may be necessary and appropriate.

Dated: April 26, 2022            Respectfully submitted,

                      By: */s/ Camille Fundora Rodriguez*

                         **Camille Fundora Rodriguez**
                         NJ No.017642011
                         **BERGER MONTAGUE PC**
                         1818 Market Street, Suite 3600
                         Philadelphia, PA 19103
                         Tel.: (215) 875-3000
                         Fax: (215) 875-4604
                         crodriguez@bm.net

- 19 -

AND

**Michael A. Josephson**
Texas Bar No. 24014780
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Taylor Montgomery**
Texas Bar No. 24580661
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tmontgomery@mybackwages.com

AND

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**